HALL, Judge.
The defendant employer and its workmen’s compensation insurer appealed from a judgment awarding plaintiff workmen’s compensation benefits at the rate of $35.00 per week during the period of his disability, not to exceed 400 weeks commencing November 16, 1965, less a credit for compensation previously paid, together with interest and costs. Plaintiff answered the appeal praying for statutory penalties and attorney’s fees which were denied in the judgment, and for an increase in the expert witness fee of Dr. L. J. Gebhauer from the sum of $100.00 allowed by the judgment to the sum of $150.00. Plaintiff also prayed for damages for frivolous appeal.
Plaintiff was injured on November 16, 1965 while working for the defendant, El-bilco, Inc., as a carpenter’s helper. At the time of the accident he was walking on 2 x 4’s about nine feet above the concrete floor of an unfinished house at Avondale Homes Subdivision on his way to descending a ladder to get more nails. His right foot slipped off the 2x4 and his left foot got caught causing him to fall towards the concrete floor. In an effort to break his fall plaintiff extended his arms attempting to catch on to something. In so doing his right arm came in contact with a metal wood fastening device studded with sharp metal prongs or brads attached to one of the building timbers. As a result thereof plain *462 tiff received a 7Yz" gash on the inside of the upper part of his right arm.
Plaintiff was taken to the Fisher-Rabin Medical Center where his wound was sutured by Dr. Morris Fisher, a surgeon, the wound requiring twenty stitches. He was told to go home and return the next day. He returned to the clinic on November 17, 18, 19 and 22nd but it is not clear that he was seen by Dr. Fisher on each occasion. The sutures were removed on November 23, 1965 and thereafter plaintiff was given diathermy. On November 30, 1965 Dr. Fisher told him to return to light work.
Plaintiff returned to his employer on December 1st and was put to work at his same rate of pay moving boxes in the warehouse. On his last day at work, which was December 14, 1965 he attempted to help a carpenter sheetrock a house belonging to his foreman. He found that he could not do the work and his hand became so swollen that he returned to the doctor. The doctor told him to come back in two weeks at which time he was going to discharge him. On January 4, 1966 Dr. Fisher told plaintiff to return to regular work to see if he was able to do it. Although Dr. Fisher did not discharge plaintiff, he thought he was able to work and expected him to return for further treatment if he couldn’t. He never returned.
Plaintiff filed suit on January 13, 1966 praying for compensation for total and permanent disability and for statutory penalties and attorney’s fees. Defendants answered the suit averring that plaintiff had fully recovered from the accident of November 16, 1965 and was not entitled to any further compensation benefits since he had been paid compensation at the rate of $35.00 per week for the two week period, November 23, 1965 through December 6, 1965.
In our opinion the testimony adduced at the trial fully substantiates the Trial Court’s holding that the plaintiff “is presently totally disabled from performing the work he was doing at the time of the accident.”
Plaintiff is 55 years old and right handed. At the time of the accident he was doing carpentry work, building forms, pouring concrete and “doing everything the other carpenters were doing.” The tools he was using consisted of hammers, skill-saws, squares, levels, shovels and concrete finishing tools. As of the date of the trial plaintiff’s disability consisted of a complete lack of sensation in the 4th and 5th fingers of his right hand, the ulna portion of the palm and back of the hand and a portion of the forearm. He had developed what is known as an “ulna claw hand” which consists of the 4th and 5th fingers being contracted in a fixed position into the palm of the hand so that they cannot be extended voluntarily. I-Ie also had a 50% restriction of movement in the thumb and other fingers of his right hand and had lost all grip in the hand. The record in our opinion leaves no doubt that as of the date of the trial plaintiff was totally disabled to perform the work he was doing at the time of the accident.
A large portion of the record is devoted to the testimony of two doctors — Dr. Louis J. Gebhauer, who testified on behalf of plaintiff, and Dr. Morris Fisher, who testified for the defendants. Defendants take the position that the determination of this case rests upon the medical testimony which they claim is conflicting and that the testimony of Dr. Fisher, the treating physician, is to be preferred to that of Dr. Gebhauer who examined the plaintiff only for the purpose of this suit.
We do not find that there is any substantial disagreement between the doctors in the purely medical aspects of their testimony. Both agree that a laceration of the inner aspect of the upper arm such as plaintiff suffered would if it involved injury to certain nerves produce the lack of sensation found in plaintiff’s 4th and 5th fingers, hand and forearm, and that it frequently produces what they refer to as the “ulna claw.” However Dr. Fisher who saw plaintiff very shortly after the accident and *463 who sutured the wound was positive that no nerves had been cut or damaged. Dr. Geb-hauer of course did not see the wound until it had fully healed. But Dr. Gebhauer demonstrated in open court, by sticking plaintiff with a needle until the blood ran, that plaintiff was totally devoid of any sensation in the parts affected. The fact that plaintiff had developed an “ulna claw” was also obvious to the Trial Judge. The testimony both of the plaintiff and Dr. Fisher also shows that on the day following the accident plaintiff complained of “numbness” in his right hand.
We have no difficulty in finding from the record that the condition of plaintiff’s hand as demonstrated to the Trial Judge is a result of the accident of November 16, 1965.
Defendants complain that the Trial Court refused to let them take a discovery deposition from plaintiff prior to the trial. Defendants have not shown wherein they have been in anywise prejudiced by the Trial Court’s action, and since the case has been fully tried on the merits we are of the opinion that the matter is now moot.
Plaintiff contends that the judgment should have imposed statutory penalties and attorney’s fees on the defendant insurer. We find no error in the Trial Court’s denial of penalties and attorney’s fees. Plaintiff was working on December 6, 1965, the date compensation was stopped. Pie continued to work until December 14th when he quit and never returned. His foreman, Mr. St. Amant, testified that when he left his employ he made no mention of inability to do his work nor did he give any other reason for not returning. In fact plaintiff made no demand or request whatever upon his employer or the insurance company for the resumption of compensation payments prior to filing suit on January 13, 1966. In our opinion the facts of this case do not call for the imposition of penalties or attorney’s fees.
Plaintiff’s request for an increase in Dr. Gebhauer’s fee is denied. The fee of $100.00 allowed by the Court is the usual and customary fee awarded in this jurisdiction for one day’s expert medical testimony. Damages for frivolous appeal are not justified and are denied.
We note that the judgment appealed from awarded legal interest on the weekly compensation payments “from the date of judicial demand until paid.” The judgment is amended by providing that interest at the legal rate be paid on each weekly installment of compensation now past due (or which in the future may become past due) from the respective due dates thereof, until paid; and as so amended and in all other respects the judgment appealed from is affirmed; defendants-appellants to pay all costs of this appeal.
Amended in part and affirmed.